# UNITED STATES DISTRICT COURT
## DISTRICT OF PUERTO RICO

**ROBERTO JULIA,**

**Plaintiff,**

**vs.**                                    CIVIL NO. 96-1768 (DRD)

**JANSSEN, INC., et. al.,**

**Defendants.**

---

## OPINION AND ORDER

Pending before this court are two motions for summary judgment submitted

simultaneously by Codefendants, Johnson & Johnson Pharmaceutical Partners ("J&J"), and

Carmen Rodríguez ("Rodríguez"). (Docket No. 34). Plaintiff, Roberto Julia ("Julia"), opposed.

(Docket No. 30). J&J and Rodríguez have duly replied. (Docket No. 33).[1]


## I. BACKGROUND

Although not evidence at this summary judgment stage, the Court draws extensively from

the Complaint in order to set the stage for the analysis to follow. Plaintiff brought this action, on

June 24, 1996, against Defendants claiming he was discharged from his employment in violation

of the American with Disabilities Act of 1990, see 42 U.S.C. § 12101 et seq., ("ADA"); the Civil

---

[1] The Court accepts Plaintiff's opposition as timely thereby rendering Docket Nos. 26, 27, and
28, as **MOOT**. Further, J&J's and Rodríguez' request for leave to reply, (Docket No. 31), is
**GRANTED**. The Court also pauses momentarily to publish its Marginal Order on the
Defendant's Motion Requesting Leave to Withdraw from Legal Representation (Docket No. 39),
"Granted. Mari Carmen Bosch is authorized to withdraw – María Teresa [Juan] Urrutia is to be
new counsel at McConnell firm. /s/ Daniel R. Dominguez 7-15-99." Accordingly, Docket No.
39 has been **GRANTED**.

Rights Act of 1867 through 1991, as amended, 29 U.S.C. §§ 1981-1988;[2] the Employee

Retirement Income Security Act, 29 U.S.C. § 1001 et seq., ("ERISA"); the Puerto Rico Non-

Occupational Disability Benefit Act, P.R. LAWS ANN. tit. 11, §§ 201-212 ("SINOT"); and the

Civil Code of Puerto Rico , art. 1802-1803,  P.R. LAWS ANN. tit. 31, §§ 5141-5142.

The Complaint states that Julia had worked at Janssen, Inc., a subsidiary of J&J, since

January 7, 1986 as a QA Technician, a Microbiologist, and most recently a Specification

Specialist.  Due to a mental impairment, depression with panic attacks, and unable to work, Julia

utilized the company's short-term disability benefits from July 20, 1994 to January 4, 1995.

During November 1994, Ms. Nora González, Benefits Administrator, informed Julia that

his short-term disability benefits ended on February 11, 1995.  Julia was not informed that he

could be terminated from his employment or loose his status of employee for failing to report

prior to that given date.[3]

Julia reported to his employer on January 4, 1995, that he was ready to work.  Julia

obtained a medical certification issued by Doctor Lourido stating that Julia was "completely

ready to return to work without limitation."

On January 11, 1995, Julia returned to the workplace where Mr. John Ortiz, Department

Head, tells Julia that a place is waiting for him.  However, on that same date, a Dr. Andres

Fuentes informed Julia that Co-defendant Rodríguez had requested Julia's medical file.  Also on

---

[2] The Court believes that the Plaintiff intended to allege 42 U.S.C. §§ 1981-1985, instead.

[3] Puerto Rico statutory law, SINOT, clearly sets forth the limits of the short-term benefit.  See P.R. LAWS ANN. tit. 11, § 203(q)(1) (Worker must petition employer to be reinstated within six (6) months; see also Footnote 7 infra.

that same date, Rodríguez made clear that J&J would not reinstate him because he was supposed to have reported back to work on January 5, 1995 and thus he had overextended his leave. The words and attitude of Rodríguez were to the effect that Julia has fabricated his disability and was pretending to return to work right at the expiration of the six-month term provided by the short-term leave plan. Julia replied that his medical condition could be medically corroborated, and that he had reported to the company on January 4, 1995. On that day he was informed that his leave would expire on the next day. Additionally, Julia informed Ms. Rodríguez that the entry date provided by the Benefit Administrator was February 11, 1995.

On January 26, 1995, Julia wrote a letter explaining that the company had deliberately miscalculated his leave expiration date and asked for a rectification of the error.

By letter, dated January 26, 1995, Julia was informed that the company not only denied his request but also proceeded to terminate him.

Julia contends that the true reason for his termination was not the reason adduced by the letter but rather his disability, discrimination against a person perceived to be depressive, and his past and possible future use of the company's disability benefits. At no time did the company attempt to accommodate the Plaintiff.

For the above, the Plaintiff seeks reinstatement, economic and compensatory damages, and punitive damages.


## II. SUMMARY JUDGMENT STANDARD

A court should grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

AO 72

genuine issue as to any material fact ..." FED. R. CIV. P. 56(c). "In applying this formulation, a

fact is 'material' if it potentially affects the outcome of the case," Vega-Rodriguez v. Puerto Rico

Tel. Co., 110 F.3d 174, 178 (1st Cir. 1997), and "'genuine' if a reasonable factfinder, examining

the evidence and drawing all reasonable inferences helpful to the party resisting summary

judgment, could resolve the dispute in that party's favor." Cortés-Irizarry v. Corporación

Insular, 111 F.3d 184, 187 (1st Cir. 1997). The court should "'look at the record ... in the light

most favorable to ... the party opposing ... the motion' ... [and] indulge all  inferences favorable

to the party opposing the motion." Hahn v. Sargent, 523 F.2d 461, 464 (1st Cir. 1975) (quoting

Poller v. Columbia Broadcasting System, 368 U.S. 464, 82 S.Ct. 486 (1962)) (citations omitted).

However, the nonmovant must "present definite, competent evidence to rebut the motion."

Mesnick v. General Elec. Co., 950 F.2d 816, 822 (1st Cir. 1991), cert. denied, 504 U.S. 985

(1992). "The court may consider any material that would be admissible or usable at trial." See

10A CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 2721, at 361 (3d ed.

1998). "But the court should do no more than this in reviewing the quality of the evidence. Most

critically, it must never 'weigh the evidence and determine the truth of the matter ... .'" Lipsett v.

University of P.R., 864 F.2d 881, 895 (1st Cir. 1988) (quoting Anderson v. Liberty Lobby, Inc.,

477 U.S. 242, 249, 106 S.Ct. 2505, 2511 (1986)). Furthermore, "[n]o credibility assessment may

be resolved in favor of the party seeking summary judgment." Woodman v. Haemonetics Corp.,

51 F.3d 1087, 1091 (1st Cir. 1995) (citations omitted). "If, after this canvassing of the material

presented, the district court finds that some genuine factual issue remains in the case, whose

resolution one way or another could affect its outcome, the court must deny the motion." Lipsett

v. University of P.R., 864 F.2d at 895 (citing Anderson v. Liberty Lobby, Inc., 477 U.S. at 242,

Page -4-

AO 72

106 S.Ct. at 2505).

"We believe that summary judgment procedures should be used sparingly ... where the issues of motive and intent play leading roles ... It is only when the witnesses are present and subject to cross-examination that their credibility and the weight to be given their testimony can be appraised.  Trial by affidavit is no substitute for trial by jury which so long has been the hallmark of 'even handed justice.'"  Poller v. Columbia Broad. Sys., 368 U.S. 470, 473, 82 S.Ct. 486, 491 (1962); cf Pullman-Standard v. Swint, 456 U.S. 273, 288-90, 102 S.Ct. 1781, 1790-1791 (1982) (discriminatory intent is a factual matter for the trier of fact); see also William Coll. v. P.B. Diagnostic Sys., Inc., 50 F.3d 1115, 1121 (1st Cir. 1995); Oliver v. Digital Equip. Corp., 846 F.2d 103, 107 (1st Cir. 1988); Lipsett v. University of P.R., 864 F.2d at 895.  "Under such circumstances [state of mind], jury judgments about credibility are typically thought to be of special importance."  Stepanischen v. Merchants Despatch Transp. Corp., 722 F.2d 922, 928 (1st Cir. 1983); see Domínguez-Cruz v. Suttle Caribe, Inc., 202 F.3d 424, 433 (1st Cir. 2000). However, "even in cases where elusive concepts such as motive or intent are at issue, summary judgment may be appropriate if the nonmoving party rests merely upon conclusory allegations, improbable inferences, and  unsupported speculation."  Ayala-Gerena v. Bristol Myers-Squibb Co., 95 F.3d 86, 95 (1st Cir. 1996).

## III. DISCUSSION

As the Court mentioned previously two motions for summary judgment are currently pending: (A) Rodríguez'; and (B) J&J's.  (Docket No. 34).  Julia filed an opposition.  (Docket No. 30).  Rodríguez and J&J have responded.  (Docket No. 33).

Page -5-

AO 72

### A. Rodríguez' Motion

Rodríguez argues that: (1) Julia failed to file a charge against Rodríguez before the Antidiscrimination Unit of the Department of Labor and Human Resources of Puerto Rico or the EEOC, for that reason the ADA claims against Rodríguez should be dismissed; (2) Julia failed to allege and/or prove that Rodríguez was his "employer" for ADA and SINOT purposes; (3) Julia failed to allege and/or prove that Rodríguez caused him any harm in her personal capacity apart from her actions as J&J's Human Resources Manager; and, (4) Rodríguez does not administer nor maintains a welfare benefit plan covered by ERISA.

Julia concedes that Rodríguez is not liable "under the Disability Act, ADA and ERISA" however, she is a proper defendant under the Civil Code of Puerto Rico, art. 1802-1803, P.R. LAWS ANN. tit. 31, §§ 5141-5142. (Docket No. 30, p. 3). The Court agrees in part, and briefly explains.

### (1) Julia's ADA claim.

This Court has recently addressed this issue as follows:

"First, the Court agrees that the ADEA does not provide for the imposition of individual liability. The First Circuit Court of Appeals and the Supreme Court have yet to decide this issue of individual liability of supervisors. See e.g. Serapion v. Martinez, 119 F.3d 982, 992 (1st Cir.1997) (circuit has not resolved issue and declined to address); see also Scarfo v. Cabletron Systems, Inc., 54 F.3d 931, 951-952 (1st Cir.1995) (similar). This district, and in particular the undersigned, has followed the majority of circuits that have confronted this issue holding that no personal liability can attach to agents and supervisors under Title VII or ADEA. See Acevedo Vargas v. Colon, 2 F.Supp.2d 203, 206-207 (D.P.R.1998) (Title VII); Contreras Bordallo v. Banco Bilbao Vizcaya de P.R., 952 F.Supp. 72 (D.P.R.1997) (Title VII); Rodriguez v. Puerto Rico Marine Management, Inc., 975 F.Supp. 115, 120 (D.P.R.1997) (ADEA)."

Diaz v. Antilles Conversion & Export, Inc., 62 F.Supp.2d 463, 465 (D. P.R. 1999) (DRD)

(ADEA); see Vicenty Martell v. Estado Libre Asociado de P.R., 48 F.Supp.2d 81, 87 (D. P.R.

1999) (SEC) (ADA and ADEA); Sifre v. Department of Health, 38 F.Supp.2d 91, 105-106 (D.

P.R. 1999) (JP) (ADA and Rehabilitation Act); Figueroa v. Fajardo, 1 F.Supp.2d 117, 120 (D.

P.R. 1998) (RLA) (ADA); Rivera Rodriguez v. Police Dep't of P.R., 968 F.Supp. 783, 785-786

(D. P.R. 1997) (JP) (ADA); Moreno v. John Crane, Inc., 963 F.Supp. 72, 76 (D. P.R.1997) (SEC)

(ADA); Figueroa v. Mateco, Inc., 939 F.Supp. 106, 107 (D. P.R. 1996) (PG) (ADEA);

Hernandez v. Wangen, 938 F.Supp. 1052, 1063-65 (D. P.R. 1996) (HL) (Title VII); Anonymous

v. Legal Serv. Corp., 932 F.Supp. 49, 50-51 (D. P.R. 1996) (PG) (ADA); Flamand v. American

Int'l Group, Inc., 876 F.Supp. 356, 361-64 (D. P.R. 1994) (HL) (ADEA); see also Meara v.

Bennett, 27 F.Supp.2d 288, 290 (D. Mass. 1998) (ADA); Miller v. CBC Companies, Inc., 908

F.Supp. 1054, 1065 (D. N.H.1995) (ADA); see generally Montez v. Romer, 32 F.Supp.2d 1235,

1241 (D. Colo.1999) (Rehabilitation Act); Baublitz v. California, No. C98-0434 CRB, 1998 WL

427444 at * 1 (N.D. Cal. July 27, 1998) (Rehabilitation Act); Huck v. Mega Nursing Servs., Inc.,

989 F.Supp. 1462, 1464 (S.D. Fl.1997) (Rehabilitation Act).  Therefore, Julia's American with

Disabilities Act of 1990, see 42 U.S.C. § 12101 et seq., ("ADA") claim against Co-defendant,

Carmen Rodríguez, is hereby **DISMISSED WITH PREJUDICE.**[4]

The Court strongly believes that Julia's claim under the Civil Rights Act, 42 U.S.C. §§

---

[4]  Additionally, the ADA claims against Rodríguez must be dismissed because Julia failed to name Rodríguez as a party respondent in his EEOC filing, (Docket No. 34, Rodríguez' – Exhibit E), and consequently, because Julia failed to exhaust EEOC procedures against Rodríguez. The Court's dismissal of Julia's ADA claim encompasses any claim against Rodríguez in her official or personal capacity.  See e.g. Flamand v. American Int'l Group, Inc., 876 F.Supp. at 363-64.

AO 72

1981-1988, must also be dismissed because the only colorable claim Julia had thereunder was a violation of ADA claim against Rodríguez, and, in conjunction with that dismissed there are no allegations to otherwise sustain a claim thereunder (i.e., Rodríguez is not a state actor, and no contractual relationship present, etc.).  Therefore, Julia is hereby **ORDERED TO SHOW CAUSE by March 31, 2000** first, whether this claim is under 29 U.S.C. or under 42 U.S.C. (as the Court believes) **and** second, why the Court should not dismiss this cause of action for failure to state a claim upon which relief may be granted for the aforestated reasons.

### (2) Julia's SINOT claim.

Rodríguez did not present any Supreme Court of Puerto Rico precedent stating that Puerto Rico Non-Occupational Disability Benefit Act, P.R. LAWS ANN. tit. 11, §§ 201-212 ("SINOT") does not impose individual liability.  Thus, although Julia did not articulate a protest, the Court is not prepared to hold that SINOT, as a matter of law, does not impose individual liability.  The Court is not in a position to trail blaze novel points of Puerto Rico law.  That is within the sole province of the Supreme Court of Puerto Rico.  Thus, this Court will retain the SINOT claim until the pretrial conference.  However, if a local decision has not been rendered resolving the issue of individual liability under SINOT at the time of the pretrial conference, the Court will dismiss without prejudice declining its supplemental jurisdiction to allow the litigants to refile before the Commonwealth courts.  See 28 U.S.C. § 1367(c)(1) (The Court may decline to exercise its supplemental jurisdiction if "the claim raises a novel or complex issue of State law.").  Further, Rodríguez does not explicitly contest Julia's cause of action under the Civil Code of Puerto Rico, art. 1802-1803, P.R. LAWS ANN. tit. 31, §§ 5141-5142, nor does Rodríguez

present any authority for such a determination that individual liability cannot thereby be

imposed.  Again, the Court is reluctant to trial blaze novel issues of Puerto Rico law.  Therefore,

the Court shall likewise retain Julia's Civil Code claims until the pretrial conference and then,

should the matter remain unresolved by local statute or jurisprudence, shall decline to exercise its

supplemental jurisdiction and dismiss subject claims without prejudice.  See 28 U.S.C. §

1367(c)(1).


**(3) Julia's ERISA claim.**

The Complaint does not allege that Rodríguez is an administrator, 29 U.S.C. § 1002(16),

or a fiduciary, 29 U.S.C. § 1002(21)(A).  Further, it is uncontraverted that Rodríguez, Director of

Human Resources of Janssen Inc. (a subsidiary of J&J), never offered Julia any benefit plan.

(Docket No. 34, Rodríguez' – Exhibit D, Roberto Julia Rodriguez' Deposition p. 60, ll. 20-24).

The Court agrees that Julia does not have a claim against Rodríguez for violation of ERISA and,

therefore, Julia's claim under Employee Retirement Income Security Act, 29 U.S.C. § 1001 et

seq., ("ERISA") against Rodríguez is **DISMISSED**.  See e.g. Rossi v. Boston Gas Co., 833 F.2d

62, 67-68 (D. Mass. 1993); Swint v. Protective Life Ins. Co., 779 F.Supp. 532 (S.D. Ala. 1991);

see also Beddall v. State Street Bank & Trust Co., 137 F.3d 12 (1st Cir. 1998) (Trustee not

fiduciary under 29 U.S.C. § 1002(21)(A)); Cottrill v. Sparrow, Johnson & Ursillo, Inc., 74 F.3d

20 (1st Cir. 1996) (Existence of discretion is a *sine qua non* of a fiduciary duty under ERISA 29

U.S.C. § 1002(21)(A)(i)); Bellilo v. Schlumberger Tech., Inc., 944 F.2d 26, 29 n.3 (1st Cir. 1991)

(Plan did not designate an administrator or fiduciary, thus plan's sponsor assumed that role.  29

U.S.C. §§ 1002(16)(A)(ii) and 1002(21)(A)); Burnham v. Guardian Life Ins. Co., 873 F.2d 486,

491 n.5 (1ˢᵗ Cir. 1989) (Because plan did not specifically designate an administrator the "plan sponsor" became the plan administrator. 29 U.S.C. § 1002(16)(A)(ii)).

## B. J&J's Motion

J&J's motion for summary judgment presents five issues as follows: (1) Julia failed to establish a *prima facie* case of disability discrimination under the ADA; (2) J&J had justified, non-discriminatory reasons not to continue to reserve Julia's employment with J&J; (3) Julia failed to establish that *but for* his disability, J&J would not have ceased to reserve his employment; (4) Julia failed to establish the essential elements of a state law claim under SINOT; and, (5) Julia's claim is not covered under ERISA.

## (1) Julia's ERISA claim.

J&J avers that Julia received benefits exclusively under SINOT a mandatory disability insurance established by state law. Thus, Julia's claim is statutorily exempted from ERISA as follows:

> "(b) The provisions of this subchapter shall not apply to any employee benefit plan if—
>
>                          ...
>
> (3) such plan is maintained solely for the purpose of complying with applicable workmen's compensation laws or unemployment compensation or disability insurance laws; ..."

29 U.S.C. § 1003(b)(3). To support its contention, J&J relies primarily on <u>Shaw v. Delta Air Lines, Inc.</u>, 463 U.S. 85, 103 S.Ct. 2890 (1983) but also cites <u>Fears v. Luedke</u>, 739 F.Supp. 327 (E.D. Tex. 1990); <u>Gibbs v. Service Lloyds Ins. Co.</u>, 711 F.Supp. 874 (E.D. Tex. 1989); <u>Olivarez</u>

v. Utica Mut. Ins. Co., 710 F.Supp. 642 (N.D. Tex. 1989); and, Foust v. City Ins. Co., 704 F.Supp. 752 (W.D. Tex. 1989).

Plaintiff's opposition motion (Docket No. 30), fails to address this issue.  Instead, Plaintiff mistakenly co-mingles his ERISA claim with his argument of discriminatory motivation under ADA.  Clearly, "ERISA does not mandate that employers provide any particular benefits, and does not itself proscribe discrimination in the provision of employee benefits."  Shaw v. Delta Air Lines, Inc., 463 U.S. at 91, 103 S.Ct. at 2897.

Equally as clear is that SINOT is an employee benefit plan under ERISA.  See 29 U.S.C. §§ 1003(a) & 1144(a); see also e.g. Shaw v. Delta Air Lines, Inc., 463 U.S. at 100-106, 103 S.Ct. at 2902-2905.  Further, SINOT is state law.[5]  See P.R. LAWS ANN. tit. 11, §§ 201-212.  However, SINOT may be exempt from ERISA pre-emption only if J&J's employee benefit plan was "maintained solely for the purpose of complying with applicable ... disability benefits laws" (in this instance SINOT).  Application of the exemption turns on "whether the plan, as an administrative unit, provides only those benefits required by the applicable state law." Shaw v. Delta Air Lines, Inc., 463 U.S. at 107, 103 S.Ct. at 2905.  Thus, in this case, "[o]nly separately administered disability plans maintained solely to comply with the [SINOT] are exempt from ERISA coverage under § 4(b)(3)."  Id.  Although J&J argues that "the non-occupational disability benefits that Juliá was receiving came form a plan J&J had expressly in compliance with a state law, to wit, SINOT," the summary judgment record is utterly devoid of any evidence to support J&J's position.  Hence, affording Julia all reasonable inferences educed from the

---

[5] "The term 'State' includes any State of the United States, the District of Columbia, Puerto Rico, ..." 29 U.S.C. §§ 1002(10).

AO 72
(Rev 8/82)

record as it stands, the Court **DENIES WITHOUT PREJUDICE** J&J's request for summary

judgment on this issue.[6]

### (2) Julia's SINOT claim.

Relevant to J&J's argument is the following excerpt from SINOT as it was in January

1995:

> "(q) Reinstatement after disability.
> In cases of disability for work in accordance with the provisions of this chapter, the employer is compelled to protect the employment held by the worker at the onset of the disability and to reinstate him in the same employment, subject to the following conditions:
> (1) that the worker petitions the employer to be reinstated in his employment within the term of fifteen (15) days, from and after the date the worker was discharged from the hospital, provided said petition has not been made after a lapse of six (6) months[7] from the date of the beginning of the disability;
> (2) that the worker is mentally and physically capable to discharge said employment at the time of requesting such reinstatement from the employer; and
> (3) that said employment is available when the worker requests reinstatement. It shall be understood that the employment is available when it is vacant or another worker is engaged therein. It shall be presumed that the employment was vacant when same was filled by another worker within the thirty (30) days following the date in which the reinstatement petition was made."

P.R. LAWS ANN. tit. 11, §§ 203(q). Furthermore, J&J cites the Supreme Court of Puerto Rico's

interpretation of P.R. LAWS ANN. tit. 11, §§ 203(q)(1) as follows:

> "Consequently, we hold that to be entitled to reinstatement in his former position, a worker temporarily disabled due to an illness or accident not connected with his employment, besides complying with the other requirements of the Disability Benefit

---

[6] J&J may latter file a further dispositive motion containing additional facts placing the Court in a position to reevaluate this issue.

[7] An amendment effective December 30, 1995 changed "six (6) months" to "one (1) year" in Subsection (q)(1). See P.R. LAWS ANN. tit. 11, §§ 203 (History).

Act, is obliged to request reinstatement on or before the lapse of the six-month term following the date when the disability began."

Rojas de Colón v. Méndez & Co., 115 P.R. Offic. Trans. 66, 70-71 (1984).  In reaching its decision, the Supreme Court of Puerto Rico specifically rejected the contention "that the six-month term should start to run from the date in which the employee actually began to receive the disability benefits provided by said act." Id. at 68.  The Supreme Court of Puerto Rico went on to hold:

> "In the case at bar, the appellant employee was disabled from work on January 19, 1976, as it appears from the application for disability benefits she signed when she requested the benefits of the cited Act No. 139 of 1968. [FN 5] The trial court ruled that the <u>verbal requirement</u> for reinstatement, made by the appellant to her employer took place after the six-month term, counting the same from January 19, 1976. [FN 6]
> [FN 5] The benefits of the Act were granted to appellant starting on February 24, 1976, since up to that date appellant had been on sick leave.  Act No. 139 does not permit benefit payments while the employee is receiving other income such as salary.
> [FN 6] In addition to the above, on August 16, 1976, appellant asked the Department of Labor of Puerto Rico for an extension of the disability benefits under Sinot, where she stated that she was still disabled at the time and that the date of her possible recovery would be October 16, 1976.  This does not conform with Item (2) paragraph (q) of sec. 203, 11 L.P.R.A., which, as we have seen, provides that 'the worker is mentally and physically capable to discharge said employment at the time of requesting such reinstatement from the employer.'"

Id. at 71 n.5 & 6.  Thus, the Court's inquiry narrows to the determination of when the disability began, when reinstatement was requested, and whether Julia was mentally and physically capable to discharge his employment at the time of the reinstatement request.

Initially in J&J's motion for summary judgment, J&J argued that Julia was disabled on July 11, 1994.  (Docket No. 34, p. 15).  However, J&J changed the date in its reply motion, **"Juliá became disabled on July 12, 1994."**  (Docket No. 33, p. 8) (emphasis in original).  In

Page -13-

support of this assertion, J&J proffers two medical certificates by Heriberto D. Lourido Ferrer, MD (Docket No. 34, Exhibit E), which both reveal that Julia's period of incapacity commenced on July 11, 1994, as well as, doctor Lourido's deposition testimony confirming that he believes that Julia was disabled as of July 11, 1994. (Docket No. 34, Exhibit D, Dr. Lourido's deposition – pp. 37, 88-89, & 134).

Plaintiff, on the other hand, states he was disabled on July 20, 1994 as evidenced by the SINOT's disability request form medical certification, which Dr. Lourido signed stating July 20, 1994 was the onset date of Julia's incapacity. (Docket No. 30, Exhibit A). Further, although Julia's last day of work was July 11, 1994, he did not file his application for disability under SINOT until July 20, 1994. (Docket No. 30, María Alvarez' deposition – p. 21). Moreover, Julia has proffered evidence which challenges the veracity of the certificate by Dr. Lourido completed on January 24, 1995 (Docket No. 33, Exhibit E (second certificate)) stating Julia's disability commenced on July 12, 1994. (Docket No. 30, Exhibits D & E); see also (Docket No. 30, Dr. Lourido's deposition – pp. 43, 89, 92-94, 109-111, 123, & 125-130). Plaintiff also attached a document entitled "MEDICAL REPORT", wherein Dr. Lourido states that Julia had been under his medical care as of July 20, 1994.   (Docket No. 30, Exhibit B).

The Court holds that the myriad of evidence proffered by Julia creates a genuine issue of material fact as to the date Julia's disability began for SINOT. See Lipsett v. University of P.R., 864 F.2d at 895 (Court "must never weigh the evidence and determine the truth of the matter"). Woodman v. Haemonetics Corp., 51 F.3d at 1091 ("No credibility assessment may be resolved in favor of the party seeking summary judgment."). However, the Court believes that even if July 12, 1994 was the date Julia's disability began there are still other genuine issues of material

fact requiring denial of summary judgment on Plaintiff's SINOT claim.  In fact, even if the onset

date was July 11, 1994 the Court's holding would remain unchanged.  The Court briefly

explains.

First, consistent with Puerto Rico statute of limitations jurisprudence, the day of the event

must be excluded whereas, the last day of the period is included.  See Salamanca v. American

Airlines, Inc., 920 F.Supp. 24 (D. P.R. 1996) (reasoning and holding adopted by Carreras-Rosa

v. Alves-Cruz, 127 F.3d 172, 175 (1st Cir. 1997)).  Second, J&J has not brought to the Court's

attention any law, statutory or otherwise, that required Julia to make a written petition for

reinstatement.  The Plaintiff has proffered an abundance of evidence, which after affording Julia

every reasonable inference adduced therefrom, creates a genuine issue of material fact as to

whether Julia orally petitioned for reinstatement on or before January 10, 1995.  (Docket No. 30,

Statement of Contested Material Facts, Fact Nos. 22-29).  Thus, the Court finds that even if July

11, 1994 was the onset of Julia's disability, at a minimum, summary judgment is inapposite

because Julia's oral reinstatement request came prior to January 12, 1995, when the six-months

deadline would have lapsed.

Furthermore, given the above evidence on the summary judgment record, particularly Dr.

Lourido's certification that Julia was able to return to work on January 12, 1995 without

limitation, likewise puts Julia's ability to perform his duties at issue.  (Docket No. 30, Exhibit B;

Dr. Lourido's deposition – p. 68); see also P.R. LAWS ANN. tit. 11, §§ 203(q)(2) ("that the

worker is mentally and physically capable to discharge said employment at the time of requesting

such reinstatement from the employer.").  Additionally, Julia has produced evidence that the his

employer, J&J, induced him to believe that the last day of his short-term benefits was February

11, 1995 and thus, his return on January 12, was timely.  That is, Nora Gonzalez, J&J benefits representative, had so informed Plaintiff that his short-term benefits expired on February 11, 1995 and, further Plaintiff was not made aware that his employment reserve (for SINOT purposes) expired prior to that date on January 5 or 9, 1995.  (Docket No. 30, Nora Gonzalez' deposition – pp. 19-20); (Docket No. 30, Carmen Rodríguez' deposition – pp. 67-68 & 76-77). Therefore, because there are factual issues in controversy, summary judgment on Julia's SINOT claim is precluded and hence J&J's motion for summary judgment regarding this issue is **DENIED**.

### (3) Julia's ADA claim.

Three of the issues posed by J&J's motion for summary judgment seek to dismiss Julia's ADA claim against J&J because: (1) Julia failed to establish a *prima facie* case of disability discrimination under the ADA; (2) J&J had justified, non-discriminatory reasons not to continue to reserve Julia's employment with J&J; and, (3) Julia failed to establish that *but for* his disability, J&J would not have ceased to reserve his employment.

The ADA provides that a covered employer shall not "discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."  42 U.S.C. § 12112(a); see Tompkins v. United Healthcare of New England, Inc., 203 F.3d 90, 94 (1st Cir. 2000).  "In order to facilitate inquiries into whether an employer's adverse employment decision was motivated by an employee's disability, courts generally use the McDonnell Douglas

Page -16-

burden-shifting scheme."[8] <u>Higgins v. New Balance Athletic Shoe, Inc.</u>, 194 F.3d 252, 264 (1st Cir. 1999) (citations omitted).  My brethren, Chief Judge Hector M. Laffitte, very recently elucidated the framework to be employed:

> "Under the <u>McDonnell Douglas</u> framework, a plaintiff must first make out a prima facie case of discrimination (or retaliation).  <u>Laurin v. Providence Hosp.</u>, 150 F.3d 52, 58 (1st Cir.1998); <u>Dichner v. Liberty Travel</u>, 141 F.3d 24, 29-30 (1st Cir.1998); <u>Champagne</u>, 138 F.3d at 12 & n. 5; <u>Cruz</u>, 52 F.Supp.2d at 286.  The employer then must articulate a legitimate non-discriminatory (or non-retaliatory) reason for the adverse employment action taken.  <u>Laurin</u>, 150 F.3d at 58; <u>Champagne</u>, 138 F.3d at 12; <u>Cruz</u>, 52 F.Supp.2d at 286.  The employer has a burden of production only; the burden of proving an improper motive always remains with the plaintiff.  <u>Dichner</u>, 141 F.3d at 30.  Once the employer meets this burden, the inference of a discriminatory (or retaliatory) motive created by the prima facie case dissolves.  <u>Id.</u>  The plaintiff then has the burden of establishing both that the employer's proffered reason is merely a pretext and that the real reason is a discriminatory (or retaliatory) animus.  <u>Id.</u>; <u>Champagne</u>, 138 F.3d at 12- 13.

<u>Cardona v. United Parcel Serv.</u>, 79 F.Supp.2d 35, 39-40 (D. P.R. 2000).

### PRIMA FACIE CASE OF DISCRIMINATION

"To establish an ADA claim, a plaintiff must establish: (1) that he or she suffers from a

---

[8] "What is required [to trigger mixed-motive analysis] is ... direct evidence that decisionmakers placed substantial negative reliance on an illegitimate criterion in reaching their decision." <u>Fernandes v. Costa Bros. Masonry, Inc.</u>, 199 F.3d 572, 580 (1st Cir. 1999) (quoting <u>Price Waterhouse v. Hopkins</u>, 490 U.S. 228, 109 S.Ct. 1775 (1989) (plurality opinion) (O'Connor, J., concurring)).  "It follows that plaintiffs may use the <u>Price Waterhouse</u> mechanism in disparate treatment cases in which they adduce direct evidence of a discriminatory animus, whereas they must proceed under the conventional <u>McDonnell Douglas</u> framework (commonly called 'pretext analysis") in all other cases." <u>Id.</u> (citing <u>Ayala-Gerena v. Bristol Myers-Squibb Co.</u>, 95 F.3d 86, 95 (1st Cir. 1996)).  Plaintiff, Julia, produced no direct evidence of discriminatory animus, and opposed the pending motion for summary judgment utilizing the <u>McDonnell Douglas</u> framework.  Thus, the Court finds that the <u>Price Waterhouse</u> mechanism is inapposite in this case and shall proceed with the <u>McDonnell Douglas</u> framework for resolution of J&J's summary judgment motion.  See <u>id.</u>; <u>Cruz-Ramos v. Puerto Rico Sun Oil Co.</u>, 202 F.3d 381, 384 (1st Cir. 2000).

AO 72
(Rev 8/82)

'disability' within the meaning of the Act; (2) that he or she was able to perform the essential functions of the job, either with or without reasonable accommodation;[9] and (3) that the employer discharged him or her in whole or in part because of that disability." Feliciano v. Rhode Island, 160 F.3d 780, 784 (1st Cir. 1998) (citing Katz v. City Metal Co., Inc., 87 F.3d 26, 30 (1st Cir. 1996); see Soto-Ocasio v. Federal Express Corp., 150 F.3d 14, 18 (1st Cir. 1998).

As J&J correctly points out, that the *sine qua non* of a ADA claim is that the plaintiff proffer sufficient evidence of a "disability". The ADA provides the applicable definition:

> "The term 'disability' means, with respect to an individual–
> (A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual;
> (B) a record of such impairment;[10] or
> (C) being regarded as having such an impairment.[11]"

---

[9] Although the ADA also prohibits an employer from failing to make "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability," 42 U.S.C. § 12112(b)(5)(A), Julia concedes that reasonable accommodation was neither requested nor necessary because at the time of his discharge he was fully capable of performing all of the essential functions of his job without a reasonable accommodation. In conjunction with that, Julia's position of employment remained open at the time he was cashiered. Thus, the distinct standard under a failure-to-accommodate claim is inapposite. See Higgins v. New Balance Athletic Shoe, Inc., 194 F.3d at 264.

[10] "(k) Has a record of such impairment means has a history of, or has been misclassified as having, a mental or physical impairment that substantially limits one or more major life activities."

29 CFR § 1630.2(k) (1999).

[11] "(l) Is regarded as having such an impairment means:
(1) Has a physical or mental impairment that does not substantially limit major life activities but is treated by a covered entity as constituting such limitation;
(2) Has a physical or mental impairment that substantially limits major life activities only as a result of the attitudes of others toward such impairment; or
(3) Has none of the impairments defined in paragraphs (h) (1) or (2) of this section but is treated by a covered entity as having a substantially limiting impairment."

Page -18-

42 U.S.C. § 12102(2). Julia claims that the record contains sufficient evidence for a jury to find that he has "... a mental impairment that substantially limits one or more of [his] major life activities ... [or was] regarded as having such an impairment." Id. Julia believes Dees v. Austin Travis City, 860 F.Supp. 1186, 1189 (W.D. Tex. 1994), supports the contention that Julia's mental impairment falls within the purview of the ADA's "disability" definition. The Court notes at this point that "no agency has been delegated the authority to interpret the term 'disability.'" Sutton v. United Air Lines, Inc., 527 U.S. 471, 119 S.Ct. 2139, 2145 (1999) (citing 42 U.S.C. § 12102(2)).

Whether a claimant is disabled under the ADA involves a case by case approach utilizing a three step inquiry. See Bragdon v. Abbott, 524 U.S. 624, 118 S.Ct. 2196, 2202, 141 L.Ed.2d 540 (1998); Albertsons, Inc. v. Kirkingburg, 527 U.S. 555, 119 S.Ct. 2162, 2169 (1999). "First, does the claimant have a physical impairment? Second, what is the life activity the claimant asserts is limited and is it a major life activity? Third, does the impairment substantially limit the major life activity?" Hurley v. Modern Continental Construction Co., 54 F.Supp.2d 85, 92-96 (D. Mass. 1999); see also Bragdon v. Abbott, 118 S.Ct. at 2202-2207.

"The first step in the inquiry under subsection (A) requires us to determine whether respondent's condition constituted a physical [or mental] impairment." Bragdon v. Abbott, 118 S.Ct. at 2202. The terms "Physical or mental impairment" are defined to mean:

"(h) Physical or mental impairment means:
(1) Any physiological disorder, or condition, cosmetic disfigurement, or anatomical

---

29 CFR § 1630.2(h) (1999).

Page -19-

loss affecting one or more of the following body systems: neurological, musculoskeletal, special sense organs, respiratory (including speech organs), cardiovascular, reproductive, digestive, genito-urinary, hemic and lymphatic, skin, and endocrine; or

(2) Any mental or psychological disorder, such as mental retardation, organic brain syndrome, emotional or mental illness, and specific learning disabilities."

29 CFR § 1630.2(h) (1999). Whereas, "substantial limits" is as follows:

(1) The term substantially limits means:
(i) Unable to perform a major life activity that the average person in the general population can perform; or
(ii) Significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity.

29 CFR § 1630.2(j)(1) (1999). Finally, "[m]ajor [l]ife [a]ctivities means functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 CFR § 1630.2(i) (1999).

The Supreme Court has ruled in <u>Sutton v. United Air Lines, Inc.</u>, 527 U.S. 471, 119 S.Ct. 2139 (1999), and its two companion cases, <u>Murphy v. United Parcel Serv., Inc.</u>, 527 U.S. 516, 119 S.Ct. 2133 (1999) and <u>Albertsons, Inc. v. Kirkingburg</u>, 527 U.S. 555, 119 S.Ct. 2162 (1999), that, with respect to subsection (A) of the disability definition, the determination of whether a claimant is disabled, that is, whether the claimant possesses a impairment that substantially limits him in one or more major life activities, must be evaluated with reference to corrective measures. In other words, an impairment does not substantially limit a major life activity if it is corrected. See <u>Sutton v. United Air Lines, Inc.</u>, 119 S.Ct. at 2146 ("Looking at the Act as a whole, it is apparent that if a person is taking measures to correct for, or mitigate, a physical or mental impairment, the effects of those measures–both positive and negative–must be taken into account

AO 72

when judging whether that person is 'substantially limited' in a major life activity and thus 'disabled' under the Act."); Murphy v. United Parcel Serv., Inc., 119 S.Ct. at 2137; Albertsons, Inc. v. Kirkingburg, 119 S.Ct. at 2168-2169.

    With the contours of the field canvassed, the Court turns to the facts of this case. Under the uncontested facts of this case, and viewed in the context of the EEOC's considerations,[12] between July 20, 1994 and January 10, 1995, Julia had an a mental impairment which substantially limited his ability to work, i.e., he was institutionalized for depression with panic

---

[12] "(2) The following factors should be considered in determining whether an individual is substantially limited in a major life activity:
(i) The nature and severity of the impairment;
(ii) The duration or expected duration of the impairment; and
(iii) The permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment.

(3) With respect to the major life activity of working--
(i) The term substantially limits means significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities. The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working.
(ii) In addition to the factors listed in paragraph (j)(2) of this section, the following factors may be considered in determining whether an individual is substantially limited in the major life activity of "working":
(A) The geographical area to which the individual has reasonable access;
(B) The job from which the individual has been disqualified because of an impairment, and the number and types of jobs utilizing similar training, knowledge, skills or abilities, within that geographical area, from which the individual is also disqualified because of the impairment (class of jobs); and/or
(C) The job from which the individual has been disqualified because of an impairment, and the number and types of other jobs not utilizing similar training, knowledge, skills or abilities, within that geographical area, from which the individual is also disqualified because of the impairment (broad range of jobs in various classes)."

29 CFR § 1630.2(j)(2) & (3) (1999).

Page -21-

attacks.  See e.g. Criado v. IBM Corp., 145 F.3d 437, 442 (1st Cir. 1998) (pre-Sutton) (First

Circuit Court of Appeals "has recognized that in some circumstances depression can constitute a

disability under the ADA.").  But, according to Plaintiff's version of the facts, Julia was not

disabled under subsection (A), particularly referenced is a letter, dated January 10, 1995, wherein

Dr. Lourido, stated that Julia "is completely able to return to his work without any limitation of

his functional capacity starting January 12, 1995." (Docket No. 30, Exhibit B; Dr. Lourido's

deposition – p. 68).  Therefore, with corrective measures, *inter alia* medication, at latest, January

12, 1995, Julia was not "substantially limited" in a major life activity (work) and thus not

"disabled" under subsection (A) of the Act. See Sutton v. United Air Lines, Inc., 119 S.Ct. at

2146; Murphy v. United Parcel Serv., Inc., 119 S.Ct. at 2137; Albertsons, Inc. v. Kirkingburg,

119 S.Ct. at 2168-2169; see also Higgins v. New Balance Athletic Shoe, Inc., 194 F.3d at 265;

Hurley v. Modern Continental Construction Co., 54 F.Supp.2d at 92-95.  However, this holding

does not end this Court's inquiry.

The Court understands that the Plaintiff plead, although inartfully, that J&J regarded Julia

as having a disability which substantially limited his ability to perform a major life activity, and

thus, the Court proceeds to evaluate whether Julia can meet the disability definition under

subsection (C). 42 U.S.C. § 12102(2)(C); (Docket No. 1, ¶ 22) ("discrimination against a person

perceived to be depressive").

> "Under subsection (C), individuals who are 'regarded as' having a disability are
> disabled within the meaning of the ADA. ... There are two apparent ways in which
> individuals may fall within this statutory definition: (1) a covered entity mistakenly
> believes that a person has a physical [or mental] impairment that substantially limits
> one or more major life activities, or (2) a covered entity mistakenly believes that an
> actual, nonlimiting impairment substantially limits one or more major life activities.
> In both cases, it is necessary that a covered entity entertain misperceptions about the

Page -22-

AO 72

individual–it must believe either that one has a substantially limiting impairment that one does not have or that one has a substantially limiting impairment when, in fact, the impairment is not so limiting. These misperceptions often 'resul[t] from stereotypic assumptions not truly indicative of ... individual ability.'"

Sutton v. United Air Lines, Inc., 119 S.Ct. at 2149 (citations omitted); see also Murphy v. United Parcel Serv., Inc., 119 S.Ct. at 2137. Just as in Sutton, Julia contends only that J&J mistakenly believed that Plaintiff's impairment substantially limited him in the major life activity of working.[13]

In the opposition for summary judgment, Julia offered his deposition testimony, wherein when he was questioned regarding his conversation with Rodríguez he stated that "it's not that [Rodríguez] put my disability into doubt. The fact that she put into doubt my ability to be well." (Docket No. 30, Roberto Julia's deposition – p. 66). And later Julia states, "And then I don't remember what happened, but she somehow argued that I wasn't in condition to work, and then I told her that I was in condition to work." (Docket No. 30, Roberto Julia's deposition – p. 125). The Court holds that a genuine issue of material fact exists as to whether Julia was fired because J&J perceived that Julia's impairment substantially limited his ability to perform his work. In this context, although the allegations in the Complaint only implicate Julia's present position, the Court is convinced that after all reasonable inferences are drawn in Julia's favor, the above genuine issue of material fact extends to J&J questioning Julia's ability to work at all. See 29 CFR § 1630.2(j)(3)(i) ("substantially limits means significantly restricted in the ability to

---

[13] The issue has not been raised whether working can be considered to be a "major life activity", and therefore, following the Supreme Court's lead in Sutton, the Court shall apply the EEOC regulations. See Sutton v. United Air Lines, Inc., 119 S.Ct. at 2151; Hurley v. Modern Continental Construction Co., 54 F.Supp.2d at 93.

Page -23-

perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities. The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working."); Murphy v. United Parcel Serv., Inc., 119 S.Ct. at 2137-2139; Sutton v. United Air Lines, Inc., 119 S.Ct. at 2150-2152.

Julia, given the discussion in this section and previous sections above, has sustained his "not onerous" burden of presenting a prima facie case of discrimination under the ADA. See Fernandes v. Costa Bros. Masonry, Inc., 199 F.3d at 580.

## LEGITIMATE NONDISCRIMINATORY REASON

Succinctly, J&J fulfilled its burden of production by proffering a legitimate nondiscriminatory reason, that is, Julia did not comply with the SINOT and thus, pursuant to SINOT J&J was allowed to terminate Julia. (Docket No. 34, J&J's motion p. 12); see Fernandes v. Costa Bros. Masonry, Inc., 199 F.3d at 581 (citing St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 506-507, 113 S.Ct. 2742 (1993); Texas Dep't of Comm'y Affairs v. Burdine, 450 U.S. 248, 254-255, 101 S.Ct. 1089 (1981)).

## PROFFERED REASON IS SHAM/PRETEXT

Because J&J has articulated a legitimate, nondiscriminatory reason for terminating Julia's employment, Julia must now show that J&J's "proffered reason is a sham, and that discriminatory animus sparked [its] actions." Fernandes v. Costa Bros. Masonry, Inc., 199 F.3d at 581 (internal quotations and citations omitted).

Page -24-

"At the final stage, the plaintiff is required to show, unassisted by the original inference of discrimination, that the employer's proffered reason is actually a pretext for discrimination of the type alleged. In assessing pretext, a court's 'focus must be on the perception of the decisionmaker,' that is, whether the employer believed its stated reason to be credible. Gray v. New England Tel. and Tel. Co., 792 F.2d 251, 256 (1ˢᵗ Cir.1986). It is not enough for a plaintiff merely to impugn the veracity of the employer's justification; he must 'elucidate specific facts which would enable a jury to find that the reason given is not only a sham, but a sham intended to cover up the employer's real motive: [disability] discrimination.'"

Mesnick v. General Elec. Co., 950 F.2d at 823-824.

"To this end, the full panoply of circumstantial evidence is available, including but not limited to 'statistical evidence showing disparate treatment by the employer of members of the protected class, comments by decisionmakers which denigrate [persons in the protected group], the incidence of differential treatment in the workplace, and the deployment of ... replacements.' Mesnick v. General Elec. Co., 950 F.2d 816, 824 (1ˢᵗ Cir. 1991) (citations omitted). The totality of the evidence then is examined 'as part of an aggregate package of proof.' Id."

Fernandes v. Costa Bros. Masonry, Inc., 199 F.3d at 581.

The Court now turns to J&J's reason – Julia did not comply with the SINOT and thus, pursuant to SINOT J&J was allowed to fire Julia.[14] Pursuant to the discussion of Julia's SINOT

[14] See Mesnick v. General Elec. Co., 950 F.2d at 823-824 n.5 ("Some opinions have linked a plaintiff's burden of demonstrating pretext to the strength of the employer's proffered reason. See, e.g., Loeb, 600 F.2d at 1012 n. 6 ('The reasonableness of the employer's reasons may of course be probative of whether they are pretexts. The more idiosyncratic or questionable the employer's reason, the easier it will be to expose it as pretext.'); see also Medina-Munoz, 896 F.2d at 10; Menzel, 848 F.2d at 329-30. Plotting the interrelationship between the plaintiff's burden and the employer's reason in such a manner appears both to square with reality and to fit well with the Court's observation that the McDonnell Douglas model 'was never intended to be rigid, mechanized, or ritualistic.' Furnco Constr. Corp. v. Waters, 438 U.S. 567, 577, 98 S.Ct. 2943, 2949-50, 57 L.Ed.2d 957 (1978). After all, if the employer offers a shaky, hard-to-swallow reason for its actions, logic counsels that the plaintiff's follow-on burden should become correspondingly lighter. On the other hand, at the summary judgment stage there remains some unresolved tension between this sliding scale approach and the principles upon which Rule 56 depends. Having noted the dilemma, we may eschew it here, for Mesnick's case cannot withstand the force of the defendant's motion whether or not a sliding scale is used.").

Page -25-

claim against J&J above, there exists a material issue of fact as to whether Julia complied with

the requirements under SINOT by requesting reinstatement within the six (6) month term.

Further, from the record Nora Gonzalez, J&J benefits representative, informed Plaintiff that his

short-term benefits expired on February 11, 1995 and Plaintiff was not made aware that his

employment reserve (for SINOT purposes) expired prior to that date on January 5 or 9, 1995.

(Docket No. 30, Nora Gonzalez' deposition – pp. 19-20); (Docket No. 30, Carmen Rodríguez'

deposition – pp. 67-68 & 76-77). Julia's conversations with Nestor Vazquez, Julia's immediate

supervisor and Quality Assurance Manager, and John Ortiz ("Ortiz"), on January 4, 1995 reveal

that Julia informed both J&J employees that he was ready and in condition to return to work and

that the doctor, relying on Julia's purported coverage date, was giving Julia a short grace period.

(Docket No. 30, Roberto Julia Rodríguez' deposition – pp. 111-112).

Ortiz, in his deposition, flatly stated that he did not participate in the decision to terminate

Julia and was not queried whether Julia should be terminated *vel non.* (Docket No. 30, John

Ortiz' deposition – p. 58). Moreover, Ortiz was not even consulted with respect to Julia's job

performance. Id. In fact, Ortiz states that "[w]hen [Julia] came back to my office, the second

time [on January 11, 1995], he asked me if he has a job, and I told him yes." Id. at 61. At that

time, according to Ortiz, Julia was qualified for his position with J&J and the position remained

open. Id. at 62. After Julia's termination, Ortiz was informed that Julia was terminated because

he had passed the time of short-term disability. Id. at 70.

In stark contrast to Ortiz' statements, Rodríguez testified that Ernesto Ramos, John Ortiz

and herself participated in the decision to terminate Julia. (Docket No. 30, Carmen Rodríguez'

deposition – p. 57). She prefaced the above statement by answering that termination decisions

AO 72
(Rev 8/82)

are made by "the supervisor ... and/or manager of the department, or division, the general manager, and the human resources manager." Id.  Additionally, Rodríguez declared that the supervisors, managers, or directors who supervise an employee are in charge of performance evaluations. Id.

The above factual scenarios coupled with the evidence and analysis of the Plaintiff's prima facie case, that is, when the evidence is taken as a whole and the Plaintiff is afforded all reasonable inferences that can be adduced therefrom, there exists a genuine issue of material fact of whether J&J's proffered legitimate business reason for Julia's termination was a pretext or sham for a discriminatory animus.  See Feliciano v. Rhode Island, 160 F.3d 780, 784 (1st Cir. 1998) (Plaintiff must show that the "employer discharged him or her in whole or in part because of that disability." Id. (citing Katz v. City Metal Co., Inc., 87 F.3d 26, 30 (1st Cir. 1996)); Soto-Ocasio v. Federal Express Corp., 150 F.3d 14, 18 (1st Cir. 1998); see also Fernandes v. Costa Bros. Masonry, Inc., 199 F.3d at 581 (At pretext/sham stage "totality of the evidence then is examined 'as part of an aggregate package of proof.'" Id. (citing Mesnick v. General Elec. Co., 950 F.2d at 824.)).  The Court holds that "on all the evidence of record, a rational factfinder could conclude that [Julia's disability] was a determining factor in the employer's decision." Mesnick v. General Elec. Co., 950 F.2d at 825 (citing United States Postal Serv. Bd. of Govs. v. Aikens, 460 U.S. 711, 716, 103 S.Ct. 1478, 1482, 75 L.Ed.2d 403 (1983)).  Therefore, J&J's motion for summary judgment is **DENIED**.  See Lipsett v. University of P.R., 864 F.2d at 895 ("[Court] must never 'weigh the evidence and determine the truth of the matter ... .'" Id. (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S.Ct. 2505, 2511 (1986)); When the disputed issue turns on a question of motive and intent "jury judgments about credibility are

Page -27-

typically thought to be of special importance."); <u>Woodman v. Haemonetics Corp.</u>, 51 F.3d at

1091 ("No credibility assessment may be resolved in favor of the party seeking summary

judgment."); <u>see also</u> <u>Poller v. Columbia Broad. Sys.</u>, 368 U.S. 470, 473, 82 S.Ct. 486, 491

(1962) ("summary judgment procedures should be used sparingly ... where the issues of motive

and intent play leading roles"); <u>Pullman-Standard v. Swint</u>, 456 U.S. at 288-90, 102 S.Ct. at

1790-1791 (discriminatory intent is a factual matter for the trier of fact); <u>William Coll. v. P.B.</u>

<u>Diagnostic Sys., Inc.</u>, 50 F.3d at 1121; <u>Oliver v. Digital Equip. Corp.</u>, 846 F.2d at 107 (1ˢᵗ Cir.

1988); <u>Stepanischen v. Merchants Despatch Transp. Corp.</u>, 722 F.2d 922, 928 (1ˢᵗ Cir. 1983).


## IV.  CONCLUSION

Wherefore, Rodríguez' motion for summary judgment (Docket No. 34) is **GRANTED**

**IN PART**, and therefore the claims by Julia against Rodríguez for violations of the ADA and

ERISA are **DISMISSED**.  Further, Julia is hereby **ORDERED TO SHOW CAUSE by March**

**31, 2000** first, whether there is a claim against Rodríguez under 29 U.S.C. or under 42 U.S.C. §§

1981-1985 (as the Court believes) and second, why the Court should not dismiss this cause of

action thereunder for failure to state a claim upon which relief may be granted for the reasons

stated in this Order.  The remainder of Rodríguez' motion is **DENIED**.

J&J's motion for summary judgment (Docket No. 34) is **DENIED**.

IT IS SO ORDERED.

**Date: March 21, 2000**

**DANIEL R. DOMINGUEZ**
**U.S. DISTRICT JUDGE**

P:\FINALORD ERS\96-1768 MSJ

Page -28-